## CHARLES S. LESTER *vs.* BENJAMIN WEBB.

The issuing of a policy of insurance by an insolvent insurance company is a good consideration for a promissory note given for the premium, if the insolvency of the company was not known by its officers or agents at the time.

It is no objection to the validity of a note given to a foreign insurance company for the premium on a policy of insurance, to allege and prove that the capital stock, to the amount of one hundred thousand dollars, had not been paid in and invested as required by *St.* 1854, *c.* 453, § 31; or that the company have neglected to appoint a general agent, under § 32 of the same act, unless notice to do so has been given to them by the treasurer of the Commonwealth.

The indorsee of a note given to a foreign insolvent insurance company for the premium on a policy of insurance is not estopped to maintain an action to recover the full amount thereof, by a statement made by him as attorney of the company to an agent of the defendant and other policy holders that all policies which might be sent to the office of the company should be cancelled, and that, upon payment of so much of the premium as had been earned, the premium notes should be surrendered, if it was in the power of the

company to surrender them, and, if not, that certificates of indebtedness of the company for the amount of the unearned premiums should be given; although he did not then disclose that he held the note given by the defendant.

CONTRACT on three promissory notes signed by the defendant, payable to the order of the National Protection Insurance Company, a corporation established in the state of New York, or order, and indorsed to the plaintiff. In the original answer, filed in November 1858, the defendant said " that on or about the 18th day of December 1854 he received from the National Protection Insurance Company three policies of insurance, for which policies he gave his premium notes, which are the notes mentioned in said plaintiff's declaration; that the agent of said company, one Mix, represented to him, at the time of taking said policies, that the said company was in good standing and was a good and solvent company, upon the faith of which representations the defendant took out said policies and gave his notes therefor as aforesaid; that said company was, at the time of the issuing of said policies, wholly worthless, and had been for some time previous utterly insolvent, and that it continued to be so during all the time for which said policies were issued, and that during that time they were not in a condition to pay any losses that might arise; and so that, having been induced to give his notes by false and fraudulent representations, said notes are wholly void; that, inasmuch as said office was insolvent at the time of giving said notes, said notes are wholly without consideration, and that if there ever was any consideration, such consideration failed; and that the plaintiff took said notes, if he took them at all, without consideration from said company, after maturity, and with a full knowledge of the facts stated above, and as security for a pre-existing debt."

In April 1859 the defendant obtained leave to amend his answer, by the addition of an averment " that said insurance company has always neglected to appoint a general agent in this commonwealth, agreeably to the laws thereof in such case made and provided, and therefore cannot maintain this action in their own name."

In December 1861, he obtained leave still further to amend his answer by the addition of averments " that the notes declared on were premium notes, given in consideration of certain policies of insurance upon the brigs Brazilian and Attakapos and the schooner Rockingham, and that said policies, by the act and with consent of the said insurance company, had been cancelled before the maturity or any transfer of said notes, and that therefore the consideration of such notes had failed ; that said insurance company was not and never had been a company with a capital stock amounting to one hundred thousand dollars, paid in and invested, exclusive of stockholders' obligations and the debts of the company ; that said company was not restricted by charter or otherwise from incurring any greater hazard in one risk than one tenth of its capital stock ; that said company had not complied with the several acts in force in this commonwealth relative to foreign insurance companies ; and that the plaintiff had reasonable cause to know and did know all the aforesaid facts to be as above set forth at the time said notes were indorsed or transferred (if at all) to him."

After the former decision of this case, reported in 1 Allen, 34, a new trial was had in the superior court, before *Lord*, J., who ruled that the facts stated in the original answer, in regard to the insolvency of the insurance company, did not constitute a defence to the notes, if they were given for policies of insurance and negotiated to the plaintiff, so that the title passed to him ; and that the facts pleaded in said answer in regard to the representations of Mix and the insolvency of the insurance company at the time the contract was made were not a defence to the premium notes.

He also ruled that the amended answer filed in April 1859 did not state a defence to the action, it not being claimed by the defendant that the treasurer of the Commonwealth had notified the company to appoint an agent under the provisions of *St.* 1854, *c.* 453.

As to the answer filed in December 1861, he ruled that the facts stated did not constitute a defence to said action for the same reason as above.

Upon the question of cancellation of the policies and the right of the defendant to have the unearned premium deducted, it appeared that if the policies were cancelled at all, it was after the transfer of the notes to the plaintiff, if such transfer was ever made ; and the other evidence on this subject tended to show that the defendant sent his policies to one Prince, an insurance broker in Boston, in order that Prince might get them cancelled ; that many other policy holders did the same ; and that Prince had an interview in relation generally to the cancellation of policies with the plaintiff, a counsellor at law, who acted as the attorney of the company. Upon this subject the judge ruled that, " if Prince called upon the plaintiff as the attorney of the company to see what arrangement could be made in relation to existing policies, and if the plaintiff, acting as such attorney, told Prince that whenever policies were sent to the office for cancellation they would be cancelled upon the payment of the earned premium, and the premium notes should be surrendered if it were in the power of the company to surrender them, but if the company had not the premium notes so they could be surrendered they would give a certificate of the amount of the unearned premium, such stipulation by the plaintiff as attorney would not of itself entitle the defendant to have the amount of unearned premium deducted from the amount of the note ; " but instructions as to what would entitle the defendant to such deduction were proposed to be given substantially as follows, to wit : " If the plaintiff (at the time holding the notes declared on) agreed with Prince, in behalf of any policy holders whom he might represent, that upon the delivery of the policies for cancellation the premium notes should be delivered up upon payment of the earned premium, and thereupon Prince sent the defendant's policies for cancellation, his surrender of the policies would be a sufficient consideration for the plaintiff's engagement, and the defendant would be entitled to a deduction of the unearned premiums."

After raising some other questions which are now immaterial, the defendant consented to a verdict for the plaintiff for the full amount of the notes, and alleged exceptions.

Lester *v.* Webb.

*J. A. Gillis*, ( *S. H. Phillips* with him,) for the defendant.

*D. Saunders, Jr. & S. B. Ives, Jr.*, for the plaintiff.

HOAR, J. 1. The ruling by the judge who presided at the trial, that the original answer filed in the case contained no legal defence to the action, if the notes declared on were given for policies of insurance, and were negotiated to the plaintiff, so that the title passed to him, was correct. The action is by an indorsee against the maker of three promissory notes. The answer avers that the notes were given to the payee, an insurance company, for certain policies of insurance; that the agent of the company who received the notes and issued the policies represented to the defendant that the company was in good standing, and a good and solvent company; but that the company was, at the time when the policies were issued, and ever since has been, utterly worthless and insolvent, and not in a condition to pay any loss that might arise; and so the defendant having been induced to give his notes by false and fraudulent representations, the said notes are wholly void; and that the plaintiff took the notes with knowledge of these facts. The obvious defect in this pleading is, that there is no averment that either the agent or the company knew or suspected the insolvency when the representations were made, or that the opinion expressed by the agent was not his real opinion. In the absence of fraud, there can be no doubt that the executory contract of an insolvent person, who may have the power to perform it when the time of performance shall arrive, is a good consideration for a promise made to him. No question of failure of consideration can affect the rights of an indorsee before maturity of a negotiable note, who received it for a sufficient consideration between himself and the payee, if the note were valid in its inception.

2. The next ground of exception is to the ruling at the trial that the answer as amended, and the additional answer, in averring that the insurance company had not complied with the provisions of law relating to foreign insurance companies contained in *St.* 1854, *c.* 453, § 31, and had not appointed a general agent under the provisions of the same chapter, §§ 32 and 36, did not

state a defence to the action. This exception cannot be sus-tained. The requirements of § 31 only apply to cases where the insurance is effected by an agent of the foreign insurance company in this commonwealth; and the answer does not allege that the insurance was so effected. The statute does not pro-hibit the making a lawful contract of insurance in any other state by an insurance company established there, with a citizen of this commonwealth, and upon property situated within its territory. But further, it is expressly provided by § 36, that " if insurance is made by a foreign insurance company, without complying with the requisitions of this act, the contract shall be valid; but the agent making the insurance shall be liable to the penalty provided in the thirty-ninth [fortieth] section." The contract is therefore valid; and being valid, the note given as the consideration must be also valid. The only exception is that created by the last clause in the section, that " if any such company shall neglect, after notice by the treasurer of this com-monwealth, to appoint a general agent, agreeably to the provis-ions of this act, they shall not recover any premium or assess-ment made by them on any contract of insurance with a citizen of this commonwealth, until the provisions of this act are com-plied with." Clearly, until notice has been given by the treasurer of the Commonwealth to appoint an agent, this disability to sue on a premium note does not arise; and no such notice is averred in the defendant's answer, nor is it contended that any such was in fact ever given.

3. The only remaining exception which was not waived at the argument relates to the instructions given by the court in relation to the cancelling of the policies, and the deduction of unearned premiums. The evidence showed that the defendant and other policy holders employed an agent to procure their pol-icies to be cancelled; that this agent had an interview with the plaintiff, who acted as attorney for the payees of the premium notes. The instruction to which exception was taken was, that if the plaintiff agreed that, on the delivery of the policies to be cancelled, the premium notes should be delivered up on pay-ment of the amount or proportion of premiums already earned,

and the defendant sent his policies to be cancelled, the amount of unearned premiums should be deducted in this suit. But if his agreement was that such deduction should be made only in cases where the insurance company still held the notes ; and in those cases where they had parted with the possession of them, so that they could not be delivered up, a certificate of the amount of unearned premiums should be given, as evidence of a claim against the company ; then the deduction should not be made in this suit. We can see no objection to the correctness of these rulings. Although the plaintiff then held the notes which are now in suit, there was nothing in his agreement which required him to disclose it. He made, in the alternative supposed, an express provision for the case of notes which the insurance company might have parted with ; and it does not appear that he was asked which particular notes were embraced in that description, or that the defendants had any reason to suppose that the notes now sued might not be of the number.

*Exceptions overruled*